**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ERIN MCNEAL, | : |
| Plaintiff, | : |
| v. | : **Civil Action No. 17-1397-RGA** |
| | : Superior Court of the State of |
| PETER GLAZMAN, et al., | : Delaware in and for New Castle County |
| | : Case No. N17C-08-303 FWW |
| Defendants. | : |

Erin McNeal, Wilmington, Delaware. Pro Se Plaintiff.

Eric Michael Sutty, Esquire, and Jonathan M. Stemerman, Esquire, Elliott Greenleaf, Wilmington, Delaware. Counsel for Defendants.

## **MEMORANDUM OPINION**

August 29, 2018
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Erin McNeal, who appears *pro se*, filed this action in the Superior Court of the State of Delaware in and for New Castle County. It was removed to this Court on October 6, 2017, by Defendants Peter Glazman and US Pack Logistics. (D.I. 1). The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pending is Plaintiff's motion for removal of Defendants' attorney (D.I. 16), Defendants' motion to compel arbitration and dismiss (D.I. 35), Defendants' motion to strike sur-reply, or alternatively, for permission to file a response to Plaintiff's sur-reply (D.I. 35), and Plaintiff's motion to remain in district court, not to participate in arbitration, and to dismiss certain defense counsel (D.I. 45). The matters have been fully briefed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this action against Defendants Peter Glazman and US Pack Logistics.[1] The Complaint provides New York addresses for both Defendants and seeks more than seven million dollars in damages. (D.I. 1-1 at p.3). Plaintiff seeks recovery relating to "Debt/Breach of Contract[,] . . . Age and Sex Discrimination, APEA [sic], Title VII, Civil Rights, Equal Rights Pay, Equal Pay Act, Equal Rights Amendment ERA, Comparable Worth, Breach of Covenant, Implied Promises, Breach of Good Faith and Fair Dealing, Retaliation, Whistle Blowing, Wrongful Termination, Theft by Deception, Back Pay, Withholding of Pay, Front Pay, Defamation, Fraud, Employee/Contractor Law with IRS and DOL, Compensatory Damages, Work Injury, Financial Loss, Emotional [and] Mental Stress." (*Id.*). Defendants removed the case

---

[1] US Pack Logistics is based in New York, New York. Glazman is its founder and chief executive officer. *See* https://www.bloomberg.com/research/stocks/private/snapshot.asp (last visited Aug. 10, 2018).

1

pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and note that the Court has supplemental jurisdiction over Plaintiff's state law claims. (D.I. 1 at p.2).

On November 5, 2013, Plaintiff "was supposedly hired as an independent contractor for Ark Logistics under US Pack Logistics . . . to pick up parcels, sort and load them into the van, at the DHL warehouse in Elkridge, MD, and deliver the parcels to the post offices in the Philadelphia Region." (D.I. 1-1 at p.6). Plaintiff alleges that she, Glazman, and US Pack entered into a five-year contract/agreement. (*Id.*). In December 2013, Plaintiff spoke with Glazman about issues with Ark Logistics' performance. (*Id.*). On February 24, 2014, Plaintiff was recognized for her skills and hard work. (*Id*). In March 2014, Plaintiff was given two more routes, but her pay was reduced. (*Id.* at p.7). In addition, she was not treated equally or fairly, and she did not receive monies owed her. (*Id.*)

In July 2014, DHL leaders/owners came from another country to examine the operations in Elkridge, Maryland, and questioned Plaintiff "on how everything runs." (*Id.* at p.8). Plaintiff alleges that Glazman was angry because he did not like her "speaking the truth." (*Id.*). On August 25, 2014, Glazman sent two of his employees to take Plaintiff's ID, keys, van, routes, bank cards, scanners, bungees, and EZ Pass transponders. (*Id.*). Plaintiff alleges that "out of nowhere, [she] was wrongfully terminated. No warning. No reason." (*Id.* at p.7). Plaintiff alleges that US Pack Logistics breached the contract and wrongfully terminated her without cause. (*Id.* at p.8).

Plaintiff spoke to Glazman several times seeking her pay. (*Id.*). She alleges that he refused to pay her and then "bad mouthed" her to Ark Logistics not to hire her and

2

stay away from her because she was bad news. (*Id.*). Plaintiff last spoke to Glazman in early September 2014. (D.I. 1-1 at p.4).

Plaintiff commenced this action on August 24, 2017 in Superior Court and Defendants removed it to this Court on October 6, 2017. Following the case's removal, Plaintiff filed a motion for removal of Defendants' attorneys. (D.I. 16). On November 13, 2017, Defendants filed a motion to compel arbitration and dismiss the case.

## MOTION FOR REMOVAL OF DEFENDANTS' ATTORNEYS

Plaintiff moves for removal of defense counsel Peter P. Perla, Erin L. Henderson, and Pete Fidopiastis on conflict of interest grounds. (D.I. 16). She also makes a request for Defendants to choose only one of their attorneys, either Eric M. Sutty or Jonathan M. Stemerman, to represent them. (*Id.*). Plaintiff contends that Perla and Henderson must be removed as attorneys due to their previous representation of Defendants. (D.I. 24 at ¶¶ 7-9). (D.I. 18). Defendants oppose on the grounds that there are no grounds for their removal.

Plaintiff relies upon ABA Model Rule 1.9 to support her position.[2] It provides, as follows:

Rule 1.9 - Duties to Former Clients

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

---

[2] The District of Delaware Local Rules provide that attorneys "shall be governed by the Model Rules of Professional Conduct of the American Bar Association." D.Del. LR 83.6(d).

3

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>> (1) whose interests are materially adverse to that person; and
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Model Rules of Prof'l Conduct R. 1.9.

Other Model Rules that come into play are Rules 1.7 and 1.13. Rule 1.13(g) provides that a lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents subject to the provisions of Rule 1.7. *Id.* at R. 1.13(g). Rule 1.7 provides that that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. *Id.* at R.1.7. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. *Id.* at R.1.7(a). However, even if there is a concurrent conflict of interest as described above, a lawyer may represent a client if the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client. *Id.* at R.1.7(b).

Perla and Henderson appear pro hac vice. (D.I. 13, 14). Fidopiastis has withdrawn from this matter. (D.I. 19 at ¶ 11). Neither Perla nor Henderson have ever represented Plaintiff. (D.I. 19 at ¶ 13; D.I. 20 at ¶ 4). Their firm, Jasinski, P.C. has represented US Pack Logistics in the past, but has never represented Glazman. (D.I. 19 at ¶ 12; D.I. 20 at ¶ 3). U.S. Pack Logistics' and Glazman's interests are aligned in this action. (D.I. 20 at ¶ 5). In addition, neither Sutty, Stemerman, or their law firm Elliott Greenleaf, P.C., have ever represented Plaintiff or either Defendant. (D.I. 21 at ¶¶ 13;3-5; D.I. 22 at ¶¶ 3-5).

There is no evidence that any of the defense attorneys have a conflict of interest in this matter. None of them have ever represented Plaintiff. Moreover, Henderson's and Perla's prior representation of US Pack Logistics does not disqualify their representation of it or Glazman, its CEO. Finally, US Pack Logistics' and Glazman's interests are aligned. There is no basis for removal of any defense attorney or a basis to require Defendants to pick only one attorney to represent them. Therefore, the motion will be denied.

## MOTION TO COMPEL ARBITRATION AND DISMISS

Defendants move to compel arbitration under the Federal Arbitration Act and to dismiss the proceedings. Defendants contend that Plaintiff is required to submit her claims to arbitration pursuant to an Owner/Operator Agreement she entered into with SCI, LLC, a New York limited liability company. Defendants argue that they are third-party beneficiaries of the Agreement. (D.I. 29 at p.2). Defendants note that the Agreement contains an arbitration clause and directs that the document must be interpreted using New York law. (*See* D.I. 29-1 at Ex. A at pp.5-7). According to

5

Defendants, by entering into the Agreement, Plaintiff agreed to provide independent contractor delivery services to various logistics brokers who are customers of SCI, such as US Pack Logistics. (D.I. 29 at p.2). Defendants contend that the Agreement contemplates their role in the independent contractor relationship with Plaintiff and as a beneficiary of the Agreement's conditions and terms. (*Id.*).

Plaintiff does not dispute that she signed the Agreement or that Defendants are third party beneficiaries of the Agreement. She opposes arbitration on the grounds that the Agreement was not renewed and, therefore, it is no longer valid and binding. In addition, she contends that only Delaware law applies.[3]

Plaintiff and SCI, LLC, a New York limited liability company, executed an Owner/Operator Agreement on February 24, 2014. (D.I. 29 at p.2; D.I. 29-1 at pp.2-8). Plaintiff signed and/or initialed each page of the Owner/Operator Agreement. (D.I. 29-1). SCI is a third-party administrator for independent owner operators in the courier and transportation business. (D.I. 29 at p.1). It contracts with courier and logistics companies that use independent owner operators to offer payment processing and other back-office services on their behalf and with independent owner operators to provide additional services and products including payment processing. (*Id.*). Plaintiff provided delivery services on behalf of US Pack Logistics. (*Id.* at p.2).

---

[3] Plaintiff filed a sur-reply. (D.I. 33). Defendants move to strike the sur-reply or, in the alternative, to file a response to the sur-reply. (D.I. 35). Given Plaintiff's *pro se* status and the fact that Defendants' motion for arbitration will be granted, the Court will dismiss the motion to strike as moot. The Court will also dismiss as moot Plaintiff's duplicative motion to remain in district court, not to participate in arbitration, and to dismiss certain defense counsel. (D.I. 45).

The Agreement provides, "The Owner/Operator agrees to maintain throughout the term of this Agreement, and, for so long as services are furnished herein, insurance that will hold SCI and Owner/Operator's Customers harmless from any and all liabilities, losses, damages, injuries, claims, expenses or the like . . . ". (D.I. 29-1 at ¶ Twelfth). It provides, "For insurance purposes, the Owner/Operator agrees to notify SCI and its Customer of any and all accidents in which the Owner/Operator's drivers are involved, and of any loss or damage to property transported." (*Id.* at ¶ Thirteenth). "The Owner/Operator agrees to indemnify, defend, and hold harmless SCI and/or Owner/Operator's Customers for any and all liability, damage, cost and expense incurred by SCI and/or its Customers." (*Id.* at ¶ Eighteenth). The Agreement grants Defendants, as "Logistics Brokers" or "Customers", subrogation rights and indemnification by Plaintiff. (*Id.* at ¶ Nineteenth).

The Owner/Operator Agreement also includes the following provisions relevant to the arbitration issue:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, or service arrangement between Owner/Operator and SCI's clients, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in the small claims court where the Owner/Operator resides.
>
> All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the Federal Arbitration Act. . . . . The arbitrators' decision shall be final and legally binding and judgment may be entered thereon.

7

D.I. 29-1 at ¶ Twenty-Sixth.

Relevant to choice of law, the Agreement provides:

This Agreement shall constitute the entire Agreement between the parties and shall supersede any other written or oral agreement between the parties with respect to the subject matter hereof. This Agreement may not be altered or amended except by a writing signed by both parties. This Agreement shall be governed by the laws of the State of New York. If any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision, and instead such provision shall be modified to the least extent necessary to render such provision enforceable while maintaining the intent thereof.

D.I. 29-1 at ¶ Twenty-Third.

There is an "evergreen provision," which provides:

The term of this Agreement shall commence on the date of execution of this document by SCI and the Owner/Operator, and shall continue for a period of ninety (90) days, subject to renewals, unless either party desires to cancel this Agreement. Notification of a party's intent not to renew this Agreement must be in writing and served upon the other party at least ten (10) days before the upcoming expiration date and shall be delivered by US Mail, Certified or Registered, return receipt requested, or by hand with receipt by the party to be served, acknowledged. If the Owner/Operator terminates this contract without 10 days' notice and not on the anniversary of the 90 day renewal, the Owner/Operator may be required to pay a penalty for said cancellation . . . . In addition, this Agreement may be canceled by SCI upon the failure of the Owner/Operator to follow generally accepted rules of conduct, . . . . Such cancellation shall be immediate upon notice from SCI, or may occur at some later date, at the sole election of SCI specified in its notice of cancellation.

D.I. 29-1 at ¶ Twenty-First.

**Legal Standards.** "The Federal Arbitration Act . . . creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 522 (3d Cir. 2009). Section 3 of the FAA requires that "If any suit . . . [is] referable to

8

arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3.

Under Section 4, "A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. *Id.* at § 4. Accordingly, "upon being satisfied that the issue involved . . . is referable to arbitration," a district court must, upon "application of one of the parties stay proceedings and compel arbitration." *Id.* at § 3. However, "district courts may dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration." *Ebner v. Financial Architects, Inc.*, 763 F. Supp. 2d 697, 699 (D. Del. 2011).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). "[W]hether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* at 649. Therefore, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523.

9

"In resolving the arbitrability of particular claims, however, a court is not to rule on the potential merits of the underlying claims." *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1377 (3d Cir. 1993). In addition, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* "In determining if parties have agreed to arbitrate, [courts] apply ordinary state-law principles that govern the formation of contracts." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

**Discussion**. Courts that have reviewed the Owner/Operator Agreement at issue have enforced its arbitration clause, noting that the "provision broadly applies to 'any dispute, claim, question, or disagreement arising from or relating to [the Agreement] or the breach thereof.'" *Greene v. Subcontracting Concepts, L.L.C.*, 2014 WL 1087999, at *2 (S.D.N.Y. Mar. 19, 2014); *see also Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2014 WL 1172581, at *3 (S.D.N.Y. Mar. 21, 2014). In a similar case where the plaintiffs and SCI were the only signatories, the court determined that, based upon the provisions of the Owner/Operator Agreement, the defendant (a company for whom the plaintiff delivered packages) was a third-party beneficiary and, thus, the agreement applied and covered the claims the plaintiffs brought against the defendant. *See Ege v. Express Messenger Systems, Inc.*, 2017 WL 87841 (W.D. Wash. Jan. 10, 2017).

Plaintiff does not contest the arbitration clause. Nor does she contend that Defendants are not third-party beneficiaries to the Owner-Operator Agreement. Instead, she contends that the Agreement is no longer valid and binding and that only

10

Delaware law applies. To the extent Plaintiff contends there is no Agreement, the Court turns first to the choice of law dispute.

**Choice of Law Provision**. Plaintiff raises federal claims and supplemental state law claims in her Complaint. Despite the choice of law provision that provides that the Agreement shall be governed by the laws of New York, Plaintiff contends that Delaware law applies given that she resides in Delaware, she filed the action in Delaware, and the "case is held in a Delaware Court under the Delaware Laws only." Plaintiff cites no authority for her position.

"[U]nder the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "That freedom extends to choice-of-law provisions governing agreements, including agreements to arbitrate." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007); *see also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (applying New York law pursuant to choice-of-law provision in determining whether to enforce arbitration agreement); *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 155 (3d Cir. 2001) ( "In general, we respect the choice of law that parties agree upon to resolve their private disputes.").

"When an agreement contains both a choice-of-law clause and an arbitration clause, the reviewing court will apply the substantive law of the state named in the choice of law clause." *Ebner*, 763 F. Supp. 2d at 700. In this case, New York is the named state. However, even if the Court were to apply Delaware law, the analysis would be the same.

11

Under New York law, where a contract has a choice of law provision, "a court is to apply the law selected in the contract so long as the state selected has sufficient contacts with the transaction." *Aramarine Brokerage, Inc., v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009). Similarly, Delaware courts routinely apply § 187 of the Restatement (Second) of Conflict of Laws to choice-of-law provisions. *See Total Holdings USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 881 (Del. Ch. 2009) Under § 187, a choice-of-law provision will be enforced unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. Restatement (Second) of Conflict of Laws § 187(2) (1971). "[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract." *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162, 166 (3d Cir. 2011).

Plaintiff resides in Delaware. The Complaint alleges that she picked up parcels in Maryland and delivered the parcels in the Philadelphia region. The office of US Pack Logistics is in New York, where it was served with process. Also, the Complaint refers to numerous telephone conversations between Plaintiff and Glazman, who is also located in New York. Under these circumstances, New York has sufficient contacts with the matter such that the New York choice-of-law provision governs the Agreement. Moreover, Plaintiff does not provide, and the Court does not find, any reason why

12

Delaware "has a materially greater interest" than New York in the determination of this issue. *See CreditInform*, 511 F.3d at 390 (finding that "[t]hough it certainly is true that Pennsylvania has an interest in protecting its consumers, we cannot say that Virginia has a lesser interest in protecting businesses located in it").

> Thus, applying the choice of law provision, the Court finds that New York law governs the inquiry into whether claims must be arbitrated. While not explicit, it may be that Plaintiff suggests that the arbitration provision is unconscionable. Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [pursuant] to its literal terms. Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable. The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se.

*Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010) (alterations and citations omitted). Here, there is no basis to find that the arbitration provision is unconscionable, either procedurally or substantively.

The arbitration clause is broad and encompasses all the claims raised by Plaintiff in her complaint. *See Greene*, 2014 WL 1087999, *supra*. In addition, the Agreement contains provisions that allows Plaintiff to choose an arbitrator to serve on the arbitration, provides for discovery, and binds the parties to arbitration. By its terms, it is not unfair toward Plaintiff. In sum, the Court concludes that Plaintiff agreed to an enforceable arbitration agreement when she executed the Owner/Operator Agreement. The claims in her Complaint are subject to arbitration.

**Evergreen Provision**. Plaintiff's claim that there is not a valid Agreement rests upon the "evergreen provision" found at the Twenty-First Paragraph. As discussed above, the arbitration clause is broad. It expressly refers to "any dispute, claim,

13

question, or disagreement arising from or relating to this agreement." (D.I. 29-1 at ¶ Twenty-Sixth).

Plaintiff seeks to avoid arbitration claiming that the Agreement is no longer in effect. In Plaintiff's view, her alleged wrongful termination on August 24, 2014 occurred long after the 90-day period and, the "motion to compel to arbitration, therefore, does not exist and does not fall within the timelime." (D.I. 31). The "evergreen clause" provides that, after the "expiration" date, the Agreement shall continue, "subject to renewals" unless either party desires to cancel the agreement through notification of a party's intent not to renew in writing and served upon the other party at least ten days before the upcoming expiration date.

Whether the arbitration clause covers the "evergreen provision" is a matter of contract interpretation, as is the question of when the "evergreen clause" terminates. *See New York Typographical Union No. 6 v. Bowne of New York City, Inc.*, 1990 WL 170352, at *8 (S.D. NY Oct. 31, 1990). Although courts typically decide the issue of whether the parties have entered into an agreement to arbitrate, the issue of expiration or termination of an agreement is a different dispute that ordinarily involves other clauses of the agreement. *See Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72-73 (2d Cir. 1997). Where an agreement "contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the 'evergreen' clause, disputes over these matters should be submitted to arbitration." *Id.* at 73. Thus, whether the "evergreen clause" has expired is for an arbitrator to weigh.

14

The record does not disclose any written notice of cancellation. While Plaintiff asserts that the Agreement has formally expired, the effect of the "evergreen clause" on the continued operation of the Agreement is, under the broad arbitration clause at issue here, a matter for the arbitrator. *See Abram Landau Real Estate*, 123 F.3d at 74; *4200 Ave. K LLC v. Fishman*, 164 F. Supp. 2d 339, 342 (S.D.N.Y. 2001). Plaintiff's claim that there is no long a valid and binding agreement is not a basis for denial of Defendants' motion.

There is no dispute that Plaintiff entered into an agreement to arbitrate, that Plaintiff's claims are encompassed by the broad arbitration clause, and that Defendants are third-party beneficiaries to the Agreement. Therefore, the Court will grant Defendants' motion to compel arbitration. The Court will not now dismiss the complaint. Rather, the case will be stayed. The parties are to file a status report in six months, or within one week of the arbitration decision, whichever comes first.

## CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's motion for removal of Defendants' attorney (D.I. 16); (2) grant Defendants' motion to compel arbitration and stay the case (D.I. 26); (3) dismiss as moot Defendants' motion to strike sur-reply, or alternatively, for permission to file a response to Plaintiff's sur-reply (D.I. 35); and dismiss as moot Plaintiff's motion to remain in district court, not to participate in arbitration, and to dismiss certain defense counsel (D.I. 45).

An appropriate Order will be entered.